**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| SHARAMONDA FIELDS, | : | |
| | : | Civil Action No. 07-2922 (SRC) |
| Plaintiff, | : | |
| | : | **OPINION** |
| v. | : | |
| | : | |
| ORGANON USA INC., ORGANON | : | |
| PHARMACEUTICALS USA INC., | : | |
| ORGANON INTERNATIONAL INC., and | : | |
| AKZO NOBEL NV, | : | |
| | : | |
| Defendants. | : | |

**CHESLER**, District Judge

     This matter comes before the Court upon the motion to remand filed by Plaintiff

Sharamonda Fields [docket item # 3]. Defendants Organon USA Inc., Organon Pharmaceuticals

USA Inc., and Organon International Inc. (hereinafter, collectively referred to as "Defendant" or

"Organon") have opposed the motion. The Court has considered the papers submitted by the

parties, and pursuant to Federal Rule of Civil Procedure 78, rules on the motion without oral

argument. For the reasons discussed below, the Court is not satisfied that it has subject matter

jurisdiction over this action, and therefore, this action will be remanded to the Superior Court of

New Jersey, Law Division, Essex County.

I.    BACKGROUND

This action arises out of alleged physical and economic harm sustained by Plaintiff as a result of her use of the prescription pharmaceutical device known as NuvaRing. Plaintiff Sharamonda Fields, a citizen and resident of California, filed a lawsuit in the Superior Court of New Jersey, Essex County, on or about June 14, 2007, naming Organon USA Inc., Organon Pharmaceuticals USA Inc., Organon International Inc. (hereinafter collectively referred to as "Organon"), and Akzo Nobel NV as Defendants.  Akzo Nobel NV is a company incorporated under the laws of the Netherlands.  Organon, a subsidiary of Akzo Nobel NV, maintains its principle place of business in New Jersey.

Plaintiff alleges in her Complaint that she sustained serious and permanent damages stemming from her use of the contraceptive NuvaRing, which is manufactured and marketed by Defendants. Plaintiff brings a six-count Complaint alleging: (1) strict product liability under the New Jersey Product Liability Act ("NJPLA"), N.J.S.A. § 2A:58C-1, *et seq.*; (2) failure to warn the medical profession of known dangers of NuvaRing in violation of the New Jersey Product Liability Act, N.J.S.A. § 2A:58C-1, *et seq.*; (3) breach of warranty; (4) common law negligence; (5) consumer fraud in violation of the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, *et seq.*; and (6) common law fraud.  Plaintiff seeks compensatory and punitive damages as well as attorney's fees.

On June 21, 2007, a Summons directed to Organon and a copy of the Complaint were delivered to Ms. Sheon Young, an employee of Organon.  Plaintiff identifies Ms. Young as a "managing agent," while Defendant maintains that she is only an "administrative legal assistant." The Summons was not signed.  Apparently, no attempt has yet been made to serve Defendant

Akzo Nobel NV.

Defendants removed this action on or about June 22, 2006, pursuant to 28 U.S.C. § 1441 (2006).  In the Notice of Removal, Defendants asserted that this Court has subject matter jurisdiction over this case because: (1) diversity jurisdiction exists in this case, and the plain language of 28 U.S.C. 1441(b) does not bar Organon from removing this action, and  (2) Plaintiff's state law claims necessarily turn on the construction of federal law and therefore "arise under" the laws of the United States pursuant to 28 U.S.C. § 1331 (2006).

## II.   DIVERSITY JURISDICTION

In an action removed to federal court under 28 U.S.C. § 1441, the removing party bears the burden of showing that there is federal subject matter jurisdiction. *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004); *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990).  Removal statutes are strictly construed against removal and all doubts are to be resolved in favor of remand.  *Entrekin v. Fisher Scientific, Inc.*, 146 F.Supp.2d 594, 604 (3d Cir. 2001); *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir. 1992);  *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987).  Moreover, the Court is mindful of Congressional intent to limit removal from the state to federal courts.  *American Fire & Casualty Co. v. Finn*, 341 U.S. 6, 10 (1951) (noting that an "important [Congressional] purpose [of the 1948 revision of the Federal Rules of Civil Procedure] was to limit removal from state courts").  Indeed, federal law dictates that "if at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."  28 U.S.C. §

3

1447(d) (2006).

A defendant may remove an action from state court to federal district court pursuant to 28 U.S.C. § 1441(a) only when the federal courts have original jurisdiction. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). Under 28 U.S.C. § 1332, federal district courts have original jurisdiction of all civil actions where the amount in controversy exceeds $75,000 and the action is between citizens of different states. This basis of federal jurisdiction is commonly referred to as diversity jurisdiction. In this case, the § 1332 requirements of diversity jurisdiction are fulfilled. The face of the Complaint demonstrates that the amount in controversy exceeds $75,000, Plaintiff is a citizen of California, and no defendant is a citizen of California.

However, 28 U.S.C. § 1441(b) imposes another condition above the requirements of original diversity jurisdiction, known as "forum defendant rule." Pursuant to § 1441(b), a case can be removed on the basis of diversity jurisdiction "only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." Thus, the forum defendant rule precludes removal based on diversity where a defendant is a citizen of the forum state, meaning the state in which the plaintiff originally filed the case. *See, e.g., Lively v. Wild Oats Mkts., Inc.*, 456 F.3d 933, 939 (9th Cir. 2006).

In the present case, Plaintiff argues that the forum defendant rule precludes removal of this action to this Court. Plaintiff asserts that Defendant Organon, which maintains its principal place of business in New Jersey, is a citizen of New Jersey, *see* 28 U.S.C. § 1332(c)(1), and as this action was initially filed in New Jersey, Organon is a forum defendant and cannot remove. Organon counters that § 1441(b) only prohibits removal where the forum defendant is "properly joined and served." Organon argues that at the time of removal, it had not been properly served,

4

and therefore § 1441(b) does not bar its removal of this action.  The question thus presented to the Court may be stated as whether a forum defendant may ever remove an action to federal court based upon diversity – that is, even before it is served with a summons and complaint.[1]

Though the parties dedicate a significant amount of the argument to the issue of whether service on Organon was proper, the Court need not resolve that issue to decide whether § 1441(b) precludes removal by forum-state Defendant Organon.  For the reasons discussed below, the Court finds that Organon is subject to the restrictions of § 1441(b) regardless of whether it had been properly served at the time of removal.  Another reading of the provision – one that would permit a forum-state defendant to remove before service is effectuated –  would run counter to the policy underlying diversity jurisdiction.

The purpose of federal diversity jurisdiction is to avoid possible prejudice to an out-of-state defendant.  *McSparran v. Weist*, 402 F.2d 867, 876 (3d Cir. 1968); S. Rep. No. 1830, 85th Cong., 2d Sess., reprinted in 1958 U.S.Code Cong. & Admin. News 3099, 3102) (explaining the "purpose of diversity of citizenship legislation . . . is to provide a separate forum for out-of-state citizens against the prejudices of local courts and local juries by making available to them the benefits and safeguards of the federal courts").  "The need for such protection [from local bias] is absent, however, in cases where the defendant is a citizen of the state in which the case is

---

[1]This question should not be confused with the similar-sounding, but different, question of the propriety of removal where a defendant, who has not been served and who is a is a citizen of the same state as a plaintiff, destroys diversity.  There, the majority opinion is that removal is improper.  *See Pecherski v. General Motors Corp.*, 636 F.2d 1156 (8th Cir. 1981).  The question here involves a defendant that is a citizen of the state in which the action was originally brought, as opposed to a citizen of plaintiff's state of citizenship.  *See Maple Leaf Bakery v. Raychem Corp.*, No. 99 C 6948, 1999 WL 1101326 *2 (N.D.Ill. Nov. 29, 1999) (emphasizing the distinction between the presence of a defendant that destroys diversity and a forum defendant).

brought." *Lively*, 456 F.3d at 940.   Similarly, in a case involving multiple defendants where at least one is a citizen of the forum state, the forum defendant rule nevertheless prohibits removal because the likelihood of local bias against all defendants is too remote to warrant removal. *See Dresser Indus., Inc. v. Underwriters at Lloyd's of London*, 106 F.3d 494, 499 (3d Cir. 1997) (stating that insofar as "diversity jurisdiction exists because of a fear that the state tribunal would be prejudiced towards the out-of-state plaintiff or defendant, that concern is understandably allayed when that party is joined with a citizen from the forum-state").

The forum defendant rule, however, creates an opportunity for procedural gamesmanship on behalf of plaintiffs trying to keep an action in state court.  A plaintiff could either improperly join a forum defendant, or alternatively, a plaintiff could join a forum defendant that the plaintiff had no honest intention of actually pursuing in litigation, and then not serve the forum defendant. Section 1441(b) attempts to eliminate these potential abuses by requiring that the forum defendant be "properly joined and served." *Stan Winston Creatures, Inc. v. Toys "R" Us, Inc.*, 314 F.Supp.2d 177, 181 (S.D.N.Y. 2003).  Indeed, "[t]he purpose of the 'joined and served' requirement is to prevent a plaintiff from blocking removal by joining as a defendant a resident party against whom it does not intend to proceed, and whom it does not even serve." *Id.*; *Holmstrom v. Harad*, No. 05 C 2714, 2005 WL 1950672, *6 (N.D.Ill. Aug. 11, 2005) (noting that "a plaintiff should not be able to prevent a served defendant from removing simply by naming, but not serving, a forum citizen as a defendant").

It is therefore well settled that a non-forum defendant will not necessarily be barred from removal by the forum defendant rule where a forum defendant is joined, but not served.  *See, e.g.*, *Ott v. Consol. Freightways Corp. of Del.*, 213 F.Supp.2d 662, 666 (S.D.Miss. 2002) (non-

forum defendant removed action, finding "no merit to plaintiffs' suggestion that the presence of an unserved resident defendant . . . precludes removal under § 1441(b)"); *Stan Winston Creatures*, 314 F.Supp.2d at 180 (stating "courts have held, virtually uniformly, that . . . an unserved resident defendant may be ignored in a determining removability").

On the other hand, where – as in this case – the forum defendant is the removing party, and clearly a legitimate defendant, there is no reason to ignore the forum defendant rule and permit removal, regardless of whether or not the removing defendant has been served.  Because the party seeking removal hails from the forum state, there is no fear of local bias.  Removal under such circumstances does not comport with the policy underlying the statutes providing for removal based upon diversity jurisdiction and frustrates the policy underlying the forum defendant rule.

This Court acknowledges that the plain language of § 1441(b) does appear to imply that a forum defendant may remove an action as long as it does so before being served.  However, such a bizarre result cannot possibly have been the intent of the legislature.  The goal of judicial statutory interpretation is to actualize legislative intent.  *U.S. v. Am. Trucking Ass'ns*, 310 U.S. 534, 542 (1940) (stating that the "function of the courts" in interpreting statutes "is to construe the language so as to give effect to the intent of Congress").  Generally, the best indication of the drafters' intent is the statute's plain language.  *Id.*  At times, however, the plain language of a statute leads to a result that could not possibly have been the intent of the drafters, in which case it is the duty of the court to interpret the statute in a manner congruent with the legislative intent. *Id.* at 543.  The Supreme Court's observations on the qualified importance of a statute's plain language in statutory interpretation guides this Court:

7

There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes. Often these words are sufficient in and of themselves to determine the purpose of the legislation. In such cases we have followed their plain meaning. When that meaning has led to absurd or futile results, however, this Court has looked beyond the words to the purpose of the act. Frequently, however, even when the plain meaning did not produce absurd results but merely an unreasonable one 'plainly at variance with the policy of the legislation as a whole' this Court has followed that purpose, rather than the literal words.

*Id.* (footnotes omitted); *see also Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (where "literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters . . . those intentions must be controlling").

While the plain language of § 1441(b) would appear to encompass even situations where the removing party is the forum defendant, that interpretation leads to the untenable result that forum defendants can remove actions from state court as long as they do so before they are served. The result of blindly applying the plain "properly joined and served" language of § 1441(b) is to eviscerate the purpose of the forum defendant rule. It creates a procedural anomaly whereby defendants can always avoid the imposition of the forum defendant rule so long as they monitor the state docket and remove the action to federal court before they are served by the plaintiff.[2] In other words, a literal interpretation of the provision creates an opportunity for gamesmanship by defendants, which could not have been the intent of the legislature in drafting the "properly joined and served" language. In short, this Court holds that the "properly joined

---

[2] In some state court systems, evidently, the race by defendants to remove before being served by the plaintiff is easily won by defendants because plaintiffs cannot serve defendant before receiving a state track assignment number. This assignment can take over a week from the time the plaintiff files suit, during which time the defendant can learn of the action and remove it to federal court. *See Thomson v. Novartis Pharm., Corp.*, Civil No. 06-6280 (JBS) 2007 WL 1521138, *3 n.4 (D.N.J. May 22, 2007).

and served" language of § 1441(b) does not encompass the situation in which the removing party

is a forum defendant, and that in such situations removal to federal court is improper.

In reaching its decision, the Court has reviewed the handful of opinions by other district

courts discussing the "properly joined and served" language.[3]  Many of these courts have focused

on whether to follow the decision of the Northern District of Illinois in *Holmstrom v. Harad*, No.

05 C 2714, 2005 WL 1950672, (N.D.Ill. Aug. 11, 2005).  *Holmstrom* involved a shareholder

derivative action originally filed in Illinois state court with twenty-eight named defendants,

including two Illinois residents.  *Id*. at *1.  One of the defendants, a citizen of Ohio, removed the

action to federal district court before any of the defendants had been served.  Id.  The *Holmstrom*

court first noted that under the plain language of § 1441(b), an unserved forum defendant does

not bar removal.  *Id.*  However, the court nevertheless denied removal, reasoning that where *no*

defendant has been served, the "the policy of the 'joined and served' requirement is not

implicated."  *Id*. at *2.  The court further explained that, where none of the defendants have been

served, the non-forum defendant "stands on equal footing as the forum defendant[,]" in that

"[n]either defendant . . . is obligated to appear in court."  *Id.*  The court also noted that once

served, the non-forum defendant would still have thirty days to remove.  *Id.*  Stated another way,

an out-of-state defendant should not fear local bias before it is served, and therefore, has no basis

---

[3]*Vivas v. Boeing Co.*, 486 F.Supp.2d 726 (N.D. Ill. 2007); *Ripley v. Eon Labs Inc.*, Civil Action No. 07-912, 2007 WL 2406806 (D.N.J. Aug. 16, 2007)*; Waldon v. Novartis Pharms. Corp.*, No. C07-01988 MJJ, 2007 WL 1747128 (N.D. Cal. June 18, 2007); *Thomson v. Novartis Pharms. Corp.*, Civil No. 06-6280 (JBS), 2007 WL 1521138 (D.N.J. May 22, 2007)*; City of Ann Arbor Employees' Ret. Sys. v. Gecht*, No. C-06-7453 EMC. Docket No. 7, 2007 WL 760568 (N.D. Cal. March 9, 2007); *Frick v. Novartis Pharms. Corp.*, No. Civ. 05-5429, 2006 WL 454360 (D.N.J. Feb. 23, 2006); *Massey v. Cassens & Sons, Inc.*, No. 05-CV-598-DRH, 2006 WL 381943 (S.D. Ill. Feb. 16, 2006); *Maitra v. Mitsubishi Heavy Indus., Ltd.*, No. CIV.A.SA01CA0209FBNN, 2002 WL 1491855 (W.D. Tex. March 29, 2002).

for removal before it has been served.

Here, unlike *Holmstrom*, a forum defendant has removed the case to this Court. For the reasons discussed above, the Court finds that § 1441(b) must bar removal by a forum defendant, whether it has been served or not. Insofar as no defendant has been served in this case, it is theoretically possible to deny removal for the reasons set forth in *Holmstrom*. However, the Court does not base its holding on that rationale. Instead, the Court finds that a forum defendant cannot remove to federal court even if the forum defendant has not been "properly joined and served."[4] Accordingly, the Court the court declines to apply § 1441(b) to permit Organon to remove this case based on diversity jurisdiction.

### III.   FEDERAL QUESTION JURISDICTION

Alternatively, Organon maintains that this Court has original federal question jurisdiction over the case because, even though the Complaint pleads only state law causes of action, there are substantial questions of federal law embedded in those claims. First, Organon maintains that Plaintiff's punitive damages claim hinges on proof that Organon committed fraud on the FDA. Second, Organon also argues that the fraud claims necessarily raise disputed and substantial federal issues, and therefore "arise under" federal law because they are based on the allegation that Organon knowingly withheld information about the safety of NuvaRing from the FDA.

---

[4]At least one other district seems to have reached the same conclusion as this Court. *Vivas v. Boeing Co.*, 486 F.Supp.2d 726 (N.D.Ill 2007). In *Vivas*, the removing party was a forum defendant and no defendant had been served. The court held that "[c]ombining the permission granted in 28 U.S.C. § 1446(b) for defendants to file a notice of removal before being served with the joined and served requirement of 28 U.S.C. § 1441(b) to allow a resident defendant to remove a case before a plaintiff even has a chance to serve him would provide a vehicle for defendants to manipulate the operation of the removal statutes." *Id.* at 734.

As to the federal nature of Plaintiff's punitive damages claim, Organon relies on a provision of the New Jersey Product Liability Act that prohibits the award of punitive damages if the litigated drug or medical device was subject to premarket approval by the FDA – as was presumably the case for the NuvaRing pharmaceutical product at issue in this case – unless "the product manufacturer knowingly withheld or misrepresented information" in violation of the FDA's regulations.  N.J.S.A. § 2A:58C-5(c).  Thus, Organon argues, a "fraud on the FDA claim" is necessarily embedded in Plaintiff's punitive damages claim and, pursuant to the Supreme Court's holding in *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341, 353 (2001), such a claim "is inherently federal in character."

It is well-established that the existence of federal subject matter jurisdiction is determined from the face of the "well-pleaded complaint."  *Caterpillar, Inc.*, 482 U.S. at 392.  With regard to federal question jurisdiction, this normally means that the complaint pleads a federal cause of action.  *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986); *Louisville & Nashville Railroad v. Mottley*, 211 U.S. 149 (1918).  In other words, the well-pleaded complaint rule generally bars federal jurisdiction where a plaintiff's complaint on its face states only state law causes of action, even though issues of federal law may be involved. *Carrington v. RCA Global Commc'ns, Inc.*, 762 F. Supp. 632, 636 (D.N.J. 1991).

The parties do not dispute that the Complaint in this action asserts only state law causes of action.  Organon contends that the Court nevertheless has "arising under" jurisdiction on the grounds that, under the New Jersey Product Liability Act provision quoted above, Plaintiff's pursuit of punitive damages necessarily requires the Court to adjudicate the question of whether

11

Organon committed a fraud on the FDA.  Organon argues that this brings federal issues to the forefront because in *Buckman*, the Supreme Court held that a state law fraud on the FDA claim was impliedly pre-empted by the Food, Drug, and Cosmetic Act ("FDCA").  *Buckman*, 531 U.S. at 348.  The Court reasoned that

> State-law fraud on the FDA claims inevitably conflict with the FDA's responsibility to police fraud consistently with the Administration's judgment and objectives.  As a practical matter, complying with the FDA's detailed regulatory regime in the shadow of 50 States' tort regimes will dramatically increase the burdens facing potential applicants - burdens not contemplated by the Congress in enacting the FDCA and the MDA [Medical Device Amendments of 1976].

Id. at 350.

Although Organon does not argue, in the instant motion, the Plaintiff's punitive damages claim is pre-empted, it relies on *Buckman* to make the point that a state law claim that requires Plaintiff to prove that "the product manufacturer knowingly withheld or misrepresented information required to be submitted under the agency's regulations" requires a Court to analyze and decide a substantial federal issue with reference to federal regulatory law.   In other words, according to Organon, federal question jurisdiction exists on the face of the Complaint because "substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 23 (1983).

The Supreme Court has long-recognized this variety of federal "arising under" jurisdiction, in which the federal question is embedded in a state law claim. *Grable & Sons Metal Prods, Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005).  In *Grable*, the Supreme Court articulated the standard for determining whether the presence of a federal issue in a purely

state law claim may give rise to federal question jurisdiction under § 1331 as follows: "the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal law and state judicial responsibilities." *Id*. at 315.

However, Organon's attempt to federalize Plaintiff's punitive damages and fraud claims goes beyond what the *Grable* line of jurisprudence will admit. *See Empire Healthchoice Assur., Inc. v. McVeigh*, 126 S.Ct. 2121, 2137 (2006) (noting that *Grable* did not intend to open the federal courthouse to any claim involving a federal element). Indeed, this Court engaged in a detailed analysis of the *Grable* test in *Hirschbach v. NVE Bank*, 496 F.Supp.2d 451 (2007). As summarized in that opinion, *Grable* does not create federal jurisdiction for every state law claim that may involve analysis of federal law. *Id*. at 456-57.

While the Court recognizes that *Buckman* is binding precedent with regard to the viability of a state law fraud on the FDA claim, *Buckman* does not make any holding with regard to the existence of federal question jurisdiction over a case by virtue of a state law claim that incorporates federal law as setting forth the standard of offending conduct. That is the situation before this Court. As previously held by this Court, "[a] state law cause of action does not give rise to a substantial and disputed question of federal law simply because it is predicated on conduct regulated by federal law." *Hirschbach*, 496 F.Supp.2d at 455.

The question of preemption of a state law claim is distinct from the question of whether the claim "arises under" federal law. It is "settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is

anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Caterpillar, Inc.*, 482 U.S. at 393 (citing *Franchise Tax Bd.*, 463 U.S. at 12) (emphasis in original). Only where a federal cause of action *completely* preempts a state cause of action may the Court conclude that a complaint's facial state law claim really "arises under" federal law. *Franchise Tax Bd.*, 463 U.S. at 24; *see also Railway Labor Executives Ass'n v. Pittsburgh & Lake Erie Railroad Co.*, 858 F.2d 936, 939 (3d Cir. 1988) (holding that complete preemption doctrine provides that "Congress may so completely preempt a particular area, that any civil complaint raising this select group of claims is necessarily federal in character"). To this Court's knowledge, the complete preemption doctrine does not apply to the FDCA, nor does the FDCA supply a private cause of action that would enforce the interests that Plaintiff seeks to vindicate through her claims pursuant to the New Jersey Product Liability Act, New Jersey Consumer Fraud Act, and New Jersey common law. *See Railway Labor*, 858 F.2d at 942 (citing *Franchise Tax Bd.*, 463 U.S. at 24) (holding that lack of private right of action under federal statute evidences inapplicability of complete preemption doctrine).

Organon cites two pre-*Grable* cases from other district courts for the proposition that the New Jersey Product Liability Act's incorporation of a federal standard of conduct into its punitive damages provision causes Plaintiff's claim to arise under federal law: *Garcia v. Wyeth-Ayerst Labs.*, 385 F.3d 961 (6th Cir. 2004), and *Kobar ex rel. Kobar v. Novartis Corp.*, 378 F. Supp. 2d 1166 (D. Ariz. 2005). However, the Court finds both cases to be distinct from this matter and unpersuasive.

As in this case, Kobar and Garcia called upon the courts to apply the *Buckman* holding to

cases in which a state law "fraud on the FDA" claim was not at issue, but rather which involved a state law that immunizes pharmaceutical manufacturers from punitive damages unless they have defrauded the FDA.  Unlike this case, however, neither one of those courts analyzed the existence of "arising under" jurisdiction by virtue of the state law definition of conduct warranting punitive damages by reference to the FDA's disclosure requirements.  Instead, they ruled on motions seeking to dismiss the punitive damages claim based on preemption of the claim under *Buckman*.  Thus, the analysis of the courts in those cases is not persuasive and sheds no light on the subject matter jurisdiction question before this Court.  *See, e.g., In re Aredia and Zometa Prods. Liability Litig*., No. 06-MD-1760, 2007 WL 649266, at *8-*9 (M.D. Tenn. Feb. 27, 2007) (distinguishing *Buckman*, *Kobar* and *Garcia* in its discussion of whether New Jersey Product Liability Act provision making proof of fraud on the FDA a prerequisite to obtaining punitive damages "arises under" federal law pursuant to the *Grable* standard).

This Court finds that the most instructive guidance on where, according to the *Grable* test, to draw the jurisdictional boundaries in this case is provided by the Supreme Court in *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804 (1986).  In *Merrell Dow*, the defendants removed an action involving a negligence claim predicated on an alleged violation of FDCA.  The Court held that where the federal issue was merely "an element of the state tort" claim, the "congressional determination that there should be no federal remedy" for a violation of the FDCA  indicated that an alleged violation of that act as an element of the state tort to be "insufficiently 'substantial' to confer federal question jurisdiction."  *Id*. at 814.

*Grable* did not supersede the opinion in *Merrell Dow*; it merely clarified that *Merrell*

*Dow* did not require a federal cause of action as a condition for exercising federal-question jurisdiction.  *Grable*, 545 U.S. at 317-19.  *Grable* involved a quiet title action brought by a former land-owner in state court against a tax-sale purchaser, alleging the Internal Revenue Service did not give proper notice of the sale as required by 26 U.S.C. § 6335.  *Id*. at 310-311.  Defendant removed the case to federal court asserting the claim of title depended on interpretation of the notice provision in the federal law.  *Id*. at 311.  The federal statute at issue in *Grable* did not provide a cause of action.  *Id*.  However the Court found the federal issue imbedded in the state law claim to be "the only legal or factual issue in the case," and thus "actually disputed and substantial."  *Grable*, 545 U.S. at 315.  Moreover, the Court held that interpretation of a federal tax provision "is an important issue of federal law that belongs in federal court," and as quiet title actions implicating federal law are rare, federal jurisdiction in *Grable* would not offset the Congress's intended division of labor between state and federal courts.  *Id*. at 315, 319.  Accordingly, while the absence of a federal private right of action is not dispositive of whether federal question jurisdiction exists, it is relevant to the issue and should be considered by the Court.  *Id*.  at 318.

As pled in this case, the embedded federal issues are not substantial because determining the merits of the New Jersey Consumer Fraud Act claim does not depend on construction of federal law.  The Act merely requires that, in order to obtain punitive damages, Plaintiff must prove that Defendants "knowingly withheld or misrepresented information" in violation of the FDA's regulations.  N.J.S.A. § 2A:58C-5(c).  As this Court has previously held, a "state law cause of action does not give rise to a substantial and disputed question of federal law simply

16

because it is predicated on conduct regulated by federal law." *Hirschbach*, 496 F. Supp. 2d at 455. In this case, the meaning of the federal statute is simply not in dispute, and establishing such predicate acts will not federalize the state law fraud claims at issue in this case. *See Merrell Dow*, 478 U.S. at 814, n.12 (citing *Moore v. Chesapeake & Ohio R. Co*,. 291 U.S. 205, 216-17) (noting that arising under jurisdiction is not conferred where an violation of a federal standard is merely an element of a state tort, and right of recovery hinged more on the law of the state). Accordingly, the Court finds that the imbedded federal issues in the state law claims pled in the Complaint do not give rise to federal jurisdiction.

## IV.   CONCLUSION

For the foregoing reasons, this Court determines that it lacks subject matter jurisdiction over this action and accordingly remands it to the Superior Court of New Jersey. An appropriate form of order will be filed together with this Opinion.

          s/ Stanley R. Chesler
     STANLEY R. CHESLER
     United States District Judge

DATED: December 12, 2007